UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Connie M. Lane,

                                                                  Plaintiff,

    -v.-                                                           7:05-CV-0834
                                                                                 (NPM)

Commissioner of Social Security,

                                                      Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR THE PLAINTIFF: | |
| Conboy, McKay, Bachman & Kendall, LLP<br>307 State Street<br>Carthage, New York 13619 | Lawrence D. Hasseler |
| FOR THE DEFENDANT: | |
| Andrew T. Baxter<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261-7198 | William H. Pease, AUSA |
| Barbara L. Spivak<br>Chief Counsel - Region II<br>Office of the General Counsel<br>26 Federal Plaza – Room 3904<br>New York, New York 10278 | Jennifer S. Rosa,<br>Assistant Regional Counsel |

Neal P. McCurn, Senior District Judge

## *Memorandum, Decision and Order*

## I.  Introduction

By this action, plaintiff Connie M. Lane ("plaintiff") timely seeks judicial review of a final decision by defendant, Commissioner of Social Security ("the Commissioner"), denying her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits for lack of disability, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Presently before the court is a motion for judgment on the pleadings by plaintiff, and a cross-motion for judgment on the pleadings by the Commissioner, pursuant to Fed. R. Civ. P. 12(c).  Plaintiff seeks an order granting her motion for judgment on the pleadings, reversing the Commissioner's decision that she is not disabled within the meaning of the Social Security Act and remanding this case to the Social Security Administration ("SSA") for further consideration, or for calculation and payment of benefits.  The Commissioner opposes, and seeks an order affirming its decision.  The parties have filed their respective briefs, including the Administrative Record on Appeal, and the matter has been submitted and considered without oral argument.  For the reasons set forth below, the Commissioner's finding that plaintiff is not disabled within the meaning of the Social Security Act is affirmed.

## II.  Procedural Background

Plaintiff initially applied for SSDI and SSI benefits on April 10, 2003. (R. 43). The application was denied, and plaintiff timely requested a hearing, which was held before an Administrative Law Judge ("ALJ") on July 12, 2004.  (R. 286-302).  On October 29, 2004, the ALJ issued a decision, finding that plaintiff is not disabled, (R.

2

14-21), which became the final decision of the Commissioner on June 15, 2005 when the Appeals Council denied plaintiff's request for review. (R. 6-9). This timely civil action followed.

### III. Factual Background

Plaintiff Lane, born March 3,1951, was 53 at the time of the Commissioner's decision at issue here. (R. 43, 52, 299). Plaintiff completed her education through the eleventh year of high school. (R. 64, 299). Plaintiff has past relevant work experience as a cook, waitress, housekeeper and linen room attendant. (R. 59, 301). Plaintiff alleges that she has been unable to work due to a disability since February 24, 2000 (R. 58, 298). According to plaintiff, several medical conditions keep her from working, including a back injury, fractured ribs, muscle injuries, a heart condition, and asthma. (R. 58). The medical evidence of record will be subsequently addressed where relevant.

### IV. Discussion

This court does not review a final decision of the Commissioner *de novo*, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citation omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). When determining whether substantial evidence supports the Commissioner's decision, a court evaluates the record as a whole. See Curry v. Apfel, 209 F.3d 117, 121 (2d Cir. 2000) (internal citation omitted). "Substantial evidence" is evidence that amounts to "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-445 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  When reviewing a determination by the Commissioner, a district court, in its discretion, "shall [...] enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner [...], with or without remanding the cause for a rehearing."  42 U.S.C. §§ 405(g), 1383(c)(3).  See also Butts, 388 F.3d at 385.

An individual is "disabled" for purposes of her eligibility for SSDI or SSI if she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d).  See also 42 U.S.C. § 1382c.  The Commissioner may deem an individual applicant for SSDI or SSI to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d), 1382c .

SSA regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for SSDI or SSI is disabled pursuant

3

to the aforementioned statutory definition. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit Court of Appeals aptly summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

Here, the ALJ first found that plaintiff did not engage in substantial gainful activity at any time since her alleged disability onset date. (R. 16). Next, the ALJ concluded that plaintiff's intercostal neuralgia, supraventricular tachycardia, asthma and mild degenerative disc disease are severe. (R. 18). The ALJ next found that plaintiff's impairments are not listed in Appendix 1 of the regulations. (R. 18). Finally, the ALJ concluded that plaintiff possesses the residual functional capacity ("RFC") to perform the full range of light work, and therefore could perform her past relevant work as a cook, waitress, salad maker and housekeeper. (R. 19). Accordingly, the ALJ concluded

that a finding of "not disabled" is warranted.  (R. 20).

Plaintiff opposes the ALJ's determination that she is not disabled within the meaning of the Social Security Act for the following reasons:  Plaintiff first contends that when determining her RFC and when deciding that she could perform her past relevant work, the ALJ (1) failed to properly assess her credibility and, failed to consider (2) her left arm tendonitis and cervical neck pain as severe conditions; (3) her thoracic pain; and (4) the opinions of treating physicians.  Because, according to Plaintiff, she cannot perform her past relevant work, she necessarily contends that the Medical-Vocational Guidelines direct a finding that she is not disabled due to her closely approaching advanced age, limited education, and lack of transferrable skills.  The Commissioner opposes plaintiff's contentions, and argues that substantial evidence supports the decision that plaintiff is not disabled.

### *A.  Severe Impairments*

While the ALJ concluded that plaintiff has several severe impairments, including intercostal neuralgia, supraventricular tachycardia, asthma and mild degenerative disc disease, plaintiff argues that she additionally suffers from left arm tendonitis and cervical neck pain, which are also severe impairments.  According to the regulations, an impairment is severe if it alone, or in combination with any other impairment or group of impairments, "significantly limits [one's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520; 416.920.  "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  Bigwarfe v. Comm'r of Soc. Sec., No. 7:06-CV-1397, 2008 WL 4518737, at *6 (N.D.N.Y. Sept. 30, 2008) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

6

Plaintiff cites the September 4, 2003 treatment notes of Dr. Howard H. Huang and the May 27, 2004 independent medical examination report of Dr. David. R. Graham in support of her contention that her cervical neck pain is a severe impairment. According to Dr. Huang's notes, plaintiff reportedly began experiencing neck pain in August 2003. (R. 239). Cervical spine x-rays revealed "mild cervical spondylosis with some insignificant spondylolisthesis here and there." (R. 240). Dr. Huang referred plaintiff to physical therapy, and in January 2004 he noted plaintiff's report that her neck pain is significantly better with physical therapy. (R. 240-42).

On May 4, 2004, plaintiff underwent an independent medical exam by Dr. Graham at the request of Worker's Compensation. (R. 265-68). Dr. Graham noted that plaintiff's neck was getting a lot better with physical therapy, but this was discontinued by her Worker's Compensation carrier, and consequently plaintiff reported that her neck pain had become worse. (R. 267). Also, according to Dr. Graham, the spondylosis reported by Dr. Huang would suggest arthritis or degenerative disc disease in her neck, or both. (R. 267). Accordingly, the ALJ's finding that plaintiff's mild degenerative disc disease is severe would encompass her cervical neck pain, and therefore, his failure to specifically find that plaintiff's cervical neck pain is severe was not erroneous.

Regarding plaintiff's left shoulder tendonitis, she cites medical records from April 2001 through May 2004, which allegedly evidence her limited range of motion and tendonitis. However, in January 2004, Dr Huang, plaintiff's treating physician, noted that plaintiff had full range of motion bilaterally in her upper extremities with only patchy decrease of sensation in her upper left extremity. (R. 242). While Dr. Graham diagnosed plaintiff in May 2004 with tendonitis and loss of motion in her left shoulder, this was based on plaintiff's report that her left shoulder had "gotten stiff" and

7

Dr. Graham's note that plaintiff "may have" some tendonitis in her left shoulder. Moreover, the only other diagnosis of tendonitis was from Elias Nichols, M.D., who conducted an independent medical exam of plaintiff in January 2003 upon referral by plaintiff's Worker's Compensation carrier. Specifically, Dr. Nichols diagnosed plaintiff with *mild* tendonitis in her left shoulder. (R. 205). The most recent medical records from plaintiff's treating physician reflect that she had full range of motion of her left shoulder, and Dr. Graham's subsequent diagnosis is based on plaintiff's report of stiffness in her left shoulder. Accordingly, the ALJ did not err by declining to find that plaintiff's left shoulder tendonitis was severe.

### *B. Residual Functional Capacity*

The ALJ concluded that plaintiff retains the RFC to perform a full range of light work. Plaintiff argues that this is error for a variety of reasons, including the ALJ's failure to credit her complaints of pain and other symptoms as well as the opinions of her treating physicians, Drs. Huang and Peets.

### *1. Treating Physician Rule*

Plaintiff identifies two separate statements made by Drs. Huang and Peets, the former of which the ALJ disregarded and the latter of which he failed to mention at all. First, plaintiff notes that on March 26, 2001 her treating physician, Shara Peets, M.D., opined that plaintiff "is not able to work due to persistent symptoms." (R. 178). Nonetheless, as the Commissioner correctly points out, "[a] statement by a medical source that [one is] . . . 'unable to work'" is not a medical opinion, and therefore is not evidence that the ALJ is required to consider. 24 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). Accordingly, the ALJ did not err here by not considering Dr. Peets's statement.

8

Next, on October 28, 2002, Dr. Huang completed a disability certificate, which the ALJ acknowledged to limit plaintiff to sedentary work. (R. 202, 17). The ALJ further found that "[n]o objective findings are associated with this conclusion." (R. 17). Plaintiff argues that the ALJ erred in not crediting Dr. Huang's opinion in this regard because he is a treating physician and his opinion is supported by "extensive objective evidence." Pl.'s Mem. of Law at 14, Dkt. No. 6.

A treating physician's opinion is entitled to "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(d)(2). See also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). Where less than controlling weight is assigned to a treating physician's opinion, the ALJ must consider a number of factors, including, among others,

> the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

Id. (quoting 20 C.F.R. § 404.1527(d)(2)) (quotations omitted). After considering these factors, "the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Burgess, 537 F.3d at 129 (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir.2004)). Where the opinion of a treating physician is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, and is not based on clinical findings, the ALJ is not compelled to assign controlling weight to that opinion. See Owens v. Astrue, No. 5:06-CV-0736, 2009 WL 3698418, at *3 (N.D.N.Y. Nov. 3, 2009) (citing Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(d)(3)).

9

Here, the record reflects that in May, October, November and December 2001, Dr. Huang noted that plaintiff was able to do light duty work. (R. 214, 216, 217, 221). During that time, plaintiff reported that while her pain was still constant it had "definitely eased up" and classified it as a four on a scale of one to ten. (R. 214-220). Plaintiff reported her pain was about the same throughout 2002. (R. 210-214). Further, in February 2003, Dr. Huang opined that while plaintiff has "chronic pain with continuous use of multiple drugs and a long history of failed and repeated conservative treatments[,] . . . she has *only subjective complaints of long duration with minimal physical findings*, positive chronic involuntary muscle spasms and specific tenderness and no neurological deficit." (R. 208) (emphasis added). In September 2003, after plaintiff presented with new complaints of neck pain, in addition to her chief complaints of thoracic pain, neuralgia and chronic pain, Dr. Huang noted that five views of cervical spine x-rays reveal that "there is really just some mild cervical spondylosis with some insignificant spondylolisthesis here and there." (R. 240).[1] Accordingly, the ALJ did not err when he did not credit Dr. Huang's October 2002 opinion that plaintiff is limited to sedentary work because it is inconsistent with Dr. Huang's own medical exam notes throughout 2001, 2002 and 2003, which support a finding that plaintiff can do light work.

### 2. *Evaluation of Plaintiff's Complaints*

Plaintiff also alleges that the ALJ erred by not crediting her complaints of pain and other symptoms, including her thoracic pain.

---

[1] Counsel for plaintiff cites this very same doctor's note as "substantial evidence" in support of the argument that plaintiff is limited to sedentary work. However, counsel omits key adjectives used by Dr. Huang, which describe plaintiff's condition as "mild" and insignificant." Counsel is warned that such omissions come dangerously close to misrepresentation of the factual record, and he should take care to avoid any such apparent oversight in the future.

10

It is the province of the Commissioner, not the reviewing district court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). As long as the ALJ's findings are supported by substantial evidence, "the court must uphold [his] decision to discount a claimant's subjective complaints ... ." Id. (internal citations omitted).

Pursuant to Social Security Ruling 96-7p as well as section 20 C.F.R. 404.1529(c)(3), the ALJ, in evaluating an individual's symptoms, such as pain, shall consider the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996). See also 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

According to the ALJ, plaintiff's allegations are less than fully reliable for a number of reasons. The ALJ found that plaintiff's allegations of debilitating pain are not supported by the objective evidence and are inconsistent with plaintiff's own report of her daily activities. (R. 19). Plaintiff argues that the objective evidence, including the conclusions of her treating physicians as well as the findings of the C.A.N.I. Spine Center and the determination of Dr. Graham, establishes that she suffers from severe impairments which could reasonably be expected to produce the type of pain of which she complains. Plaintiff also argues that she suffered from severe thoracic pain, and that the ALJ dismissed the condition, erroneously stating that the record did not reflect any mention of the condition after May 2001. (R. 16).

To begin with, while the record reflects evidence of plaintiff's thoracic pain after May 2001, an MRI taken in November 2001 revealed no abnormalities. (R. 216). Also at that time, plaintiff reported that her pain had "definitely eased up" and from that point through all of 2002, plaintiff continued to report that her pain was about the same. Finally, in January 2004, plaintiff reported that medication helped her thoracic pain.

Regarding plaintiff's other allegations of debilitating pain, the ALJ notes that Dr. Nichols finds that there is an element of exaggeration in plaintiff as the objective findings, including MRI scans and x-rays, do not explain plaintiff's pain. (R. 206). The ALJ further cites the January 2004 opinion of Dr. Huang that plaintiff's shoulder problem had resolved. (R. 242). Dr Huang also noted at that time that plaintiff reported her neck pain was significantly better with physical therapy. In addition, the ALJ considered plaintiff's medications as well as her reports of her daily activities, which include light housework, cooking and shopping. (R. 16, 17, 19).

Plaintiff argues that the records from the C.A.N.I. Spine Center, where she

12

underwent a functional capacity evaluation ("FCE") in June 2001, as well as Dr. Graham's report of his May 2004 independent medical exam, support her reports of pain. The FCE report reflects that plaintiff "demonstrated a moderate pain profile" and that she was limited to sedentary work. (R. 253-57). However, the reports of Dr. Huang, plaintiff's treating physician, both contemporaneous and subsequent to the FCE, contradict those findings. Dr. Huang, who treated plaintiff from October 2001 through at least January 2004, specifically found that plaintiff was capable of light work after the FCE. Further, Dr. Huang subsequently reported plaintiff's reports of improvement in her pain. Dr. Graham, after examining plaintiff once, and without the benefit of MRIs or x-rays, which other physicians have acknowledged do not support plaintiff's reports of pain, noted plaintiff's discomfort in the left side of her chest, left shoulder and neck and diagnosed her with intercostal neuralgia, possible cervical disc disease, and left shoulder tendonitis. (R. 266-67). Because substantial evidence contradicts the reports of Dr. Graham and the Spine Center, the ALJ did not err by declining to credit those reports.

Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's allegations of pain are not entirely reliable. In addition, substantial evidence supports the ALJ's conclusion that plaintiff retains the RFC for a full range of light work. Specifically, Dr. Huang's reports throughout 2001, 2002 and 2003 reflect that MRIs and x-rays do not reflect plaintiff's reports of pain, that plaintiff reported improvement in her pain, and that plaintiff is capable of light work.

Because substantial evidence supports the ALJ's conclusion that plaintiff can perform a full range of light work, based on the vocational expert's uncontested testimony that plaintiff's past relevant work as a waitress, cook, salad maker and

housekeeper are all classified at the light exertional level, substantial evidence therefore supports the ALJ's conclusion that plaintiff can perform her past relevant work and that she is accordingly not disabled within the meaning of the Social Security Act. Consequently, plaintiff's additional argument that the Medical Vocational guidelines direct a finding that plaintiff is disabled, which is conditioned on a finding that plaintiff cannot perform her past relevant work, is without merit.

### *V.  Conclusion*

For the reasons set forth above it is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is GRANTED, and it is further

ORDERED that plaintiff's motion for judgment on the pleadings is DENIED, and it is further

ORDERED that plaintiff's complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED:   December 24, 2009
         Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge